Good morning, Your Honors. May it please the Court. Julie Murray for Plaintiff Appellant, Mr. Joseph Viello. If I could, I'd like to reserve three minutes of my time for rebuttal. This preliminary injunction appeal involves an ordinance that requires anyone, including my client, who seeks to use sound amplifying equipment on public property that is audible more than 50 feet away to obtain a permit before doing so. It applies regardless whether my client acts alone or as part of a large group. It applies to noisy sites like Six Flags Discovery Kingdom as well as quiet ones. And it applies regardless whether my client intends to or actually does create a noise disturbance. In fact, under the terms of the permit regime, a permittee is prohibited from creating a noise disturbance when using sound amplifying equipment. We believe the district court erred, or committed a legal error, when it determined that Chapter 8.56 was narrowly tailored to advance the City's interests. Now, to be clear, we don't disagree or we don't challenge the City's significant interests in, for example, avoiding noise disturbances, potential problems that those disturbances could create in terms of distractions and whatnot. We don't challenge those. But a long line of this Court's cases has, however, made clear that it is not enough for a City to simply put forward a significant interest, such as traffic control. It also has to show how that interest is threatened in a significant way by the regulated conduct. So, for example, in the Food Not Bombs, this Court actually said that the match between the regulated conduct and the interest that's threatened, there have to be events that realistically present serious concerns significantly beyond those of daily use. So it's not enough for the City, for example, to say that it's someone using a bullhorn might engage in a noise disturbance or might create distractions for drivers. There has to be a much closer link in order to find that Chapter 8.56 is narrowly tailored to advance the City's interests. In the same ---- Kagan. What interest is the City arguing for now? Well, so I think that the City has focused on the fact that it's added findings to Chapter 8.56. But I do want to be clear. Those findings, we think, merely confirm what the district court and the parties proceeded on in terms of the interest in preventing noise disturbances below. So in Chapter 8.56.010, the City points to findings with respect to potentially threats to public safety, to, you know, that it might cause traffic accidents, the use of sound amplifying equipment. It also refers to some competing uses. If you look at the noise disturbance ordinance, though, 7.84, so the absolute prohibition, the City has always defined noise disturbances to encompass conduct that, for example, would endanger public health or safety, that could endanger personal property, or that could annoy a person of reasonable ---- a reasonable person of normal sensitivity. So we think the interests of the City have remained the same throughout, even though the City has added some findings to its statute. And the way the statute is written now, the ---- essentially, you get a permit for the asking, but there may be some delay. And there seems to be no authority not to give the permit. Well, in Chapter 8.56.080, the City can deny a permit if the application includes materially false information, is incomplete, or the use would violate one of the conditions of use. But you're right, Your Honor, that those are the only basic ---- But in the end, if you come in and say that I'm not going to violate the other ordinance, then you get your permit. That's right, Your Honor. There are some ---- there's a provision that would permit some conditional ---- additional conditions added to the permit, for example, with respect to competing uses. But, yes, if you do as my client, Mr. Cuviello, did in his e-mail to the City, that's at SCR 14, and say, I'm not going to create a noise disturbance, I'm not going to protest near sensitive sites, I'm not going to use a bullhorn that exceeds 15 watts of amplification, you should get your permit. The only thing that the City is doing is essentially forcing that protester to out himself, and to do so in advance. But you're also challenging, as I understand it, some of the restriction ---- locational restrictions insofar as they apply when the locations are not in use, is that right? Insofar as they apply to ---- When they're ---- when the places are not in use, hospitals, clinics, animal care facilities. We use that, Your Honor, as, I think, an indicator of the statute's overbreath. I mean, as my client has made clear to the City, though, where he plans to protest is not actually within the 300 feet of those sensitive sites, so it doesn't actually apply to him, but we think it's an indicator of overbreath. It's not necessary, certainly, to this Court finding in his favor, either on an as-applied or facial challenge. So the only thing you're really challenging is the flat permit requirement. Is the permit requirement in.030 in that it requires my client, like anybody, if he's using a bullhorn that can be heard more than 50 feet away, he has to get a permit. And under the terms of that permit, he cannot create a noise disturbance. So I think this case, we pointed to the Arab Anti-Discrimination Committee decision that this Court cited with approval and extensively in the Food Not Bombs case. I think this case is similar. It — where a city essentially requires a permit to have people identify themselves, only to apply to that permit requirement a prohibition on the very conduct that would permit them to — to institute a time, place, and manner restriction, that is not narrowly tailored. And certainly here, where it's a — a sweeping permit requirement across the City, anywhere on public property, to bullhorns that do not create a noise disturbance, so too this ordinance is not narrowly tailored. Is it a misdemeanor to use a bullhorn without — a bullhorn without a permit? So, Your Honor, I don't know the answer to that offhand. I think that you can be cited for it. I'm not sure whether it's actually a criminal citation or a civil one. Couldn't quite tell. Yeah, I — the — the — the officer Kutnick had threatened to confiscate — Right. For a crime. Yeah. I don't remember if that was the exact — if he used the term crime, but there was certainly the suggestion that it could be a criminal offense given the confiscation. But there, you know, certainly is no doubt here that the — there was this threat of enforcement against my client, and the permit requirement remains. Was there any chance that the permit, had he asked for one, would have been denied? Well, in terms of his particular use restrictions, or his particular intent to use it. Right. I thought the — the ordinance was — was fairly lenient in that the — the person in charge of evaluating these applications was pretty much effectively required to grant the application. I — certainly with respect to my client, Your Honor, who said out — up front that he was not intending to create a noise disturbance, the city would have been required, we think should have been required, to issue a permit. But — but the Supreme Court, for example, was clear in the Watchtower Bible case, simply because the permit requirement is ministerial and is always granted, that doesn't, you know, essentially excuse an unconstitutional ordinance that requires permits. It still is requiring advance notice, the outing of people who want to engage — engage in protected speech that does not — Not — not really, though, because it has nothing to do with the content of the speech. It just has to do with the manner in which the speech is going to be made. Like, he could have gone out there — he didn't have to tell the city he's going to go out there and protest Six Flags. He could just go out there with — by himself, or with 10 of his friends, or with 50 of his friends. But once you introduce a bullhorn, then it's a different situation. That's true, Your Honor, but I don't think, in light of the Supreme Court's decision in SIA, that the — the — here, the bullhorn use, sound amplification the Supreme Court has acknowledged, is covered, it's protected by the First Amendment. So we don't disagree. This is a time, place, and manner restriction. They weren't saying he couldn't use a bullhorn at all. But they were restricting his access to the use of sound amplification, very, very similar to what was at issue in SIA, and that's covered both by the First Amendment and by analogous California constitutional provisions. If I could turn to the one other point that I wanted to make on — on — with respect to the narrow tailoring, is the availability of obvious alternatives, because this Court has — has said in its cases that the — although the city is not required to use a least-restrictive ordinance, and — and the court shouldn't apply a least-restrictive means test, nevertheless, the availability of obvious alternatives is an indicator that an ordinance is overbroad. So I wanted to go through what some of those obvious alternatives would be. I think one of them, the — the most obvious one, is enforcement, vigorous enforcement of Chapter 7.84, when someone actually does create a noise disturbance. You know, there is a prohibition against that in the city. So in cases like McCullen, the Supreme Court has pointed to the — the availability of similar statutes as an obvious alternative that weighs against — Kagan. What if they wanted — what if they had a permitting requirement, if you want to create a noise disturbance, essentially for permission to create a noise disturbance? Yeah. I — I think that that would be a very different story, Your Honor. And as we pointed out in the Rosenbaum case, which the — the city relies on, the San Francisco ordinance is — is similar to what you're describing, Your Honor. It allows individuals to use sound amplification in circumstances that would otherwise be a public nuisance. So it does at least serve some other purpose. Here, the only purpose is identifying people who are, by the terms of the permit regime, committing not to engage in the very same conduct that is the only basis for the government's ability to regulate it. So that would be one alternative, is the — the enforcement of the Chapter 7.84. Another alternative is to have some kind of first-come, first-served provision. You know, it's possible that the city could say, if you are — have a bullhorn and you show up and there's someone else that has a bullhorn or, you know, that you ask people to spread out if they're all using bullhorns, you could do something like that if it would create or rise to the level of a noise disturbance. But for an individual single-speaker registration requirement, you know, we think that that sweeps far too broadly in light of the alternative — the various alternatives that the city would have available to it. Did you want to save some time for rebuttal? I do. Okay. Thank you, Your Honor. Good morning. May it please the Court. My name is Caitlin Knight. I represent the City of Vallejo, Claudia Quintana, and Michael Kutnick. The appellant in this case seeks a preliminary injunction. Could you keep your voice up? Oh, I'm sorry, Your Honor. The appellant seeks a preliminary injunction in this case to enjoin enforcement of an ordinance that no longer exists. At the time that he filed his motion for preliminary — But the core of it does exist. I mean, the main thing she's complaining about, or they're complaining about, is that they have to get a permit to use a bullhorn to — even if they're not otherwise violating the city noise ordinance. And that was true before. It is true now. And that hasn't changed. Is that right? The fact that a permit is required, you're correct, Your Honor. It is required. Why can't we just litigate that? Because the conditions surrounding that permit have changed substantially. In the original ordinance, there was no exception to the permit requirement. You had to get one. There was a 10-day notice period. I thought you did have — still have to get one. Three days now. Three days now under the current ordinance. Under the old ordinance, it was a — But you said there was no exception, and there's still no exception. You still have to get one. There are exceptions, Your Honor. Actually, there's an exception for private property where you have permission of the owner and for activities in response to an occurrence where there was insufficient time to go and get a permit. In that case, the ordinance just says try to give the police chief some notice at least an hour before the event, but you don't have to go through with the permit requirement. So it includes those exceptions. In addition to that, there's a definition of a sound amplification device. In the original ordinance, there was no definition. However, in the new ordinance, it explicitly states that that is limited to devices that project sound 50 feet away. So I would say that that's more narrow. Additionally, there used to be — But she's still challenging what's still there. So why don't — why are we worrying about what's not there as opposed to what is there? Well, Your Honor, the standard here for mootness is whether this presents a substantially different controversy than what was decided by the district court. But it doesn't, because she's challenging the fact that she has — that they have to get a petition to three days in whatever amount of time is stated in the ordinance, but several — well before the — the event. And so she may be on weaker ground in the sense that some of the arguments she had before about what was wrong with this ordinance aren't there anymore, but she still has a basic problem. She has to get the permit. She still has to get the permits, Your Honor. However, a permit where there are exceptions and there's only a three-day notice period is quite different from a — But that's the only one we're litigating. We're litigating what's there now, right? Yes. And it's not unusual to have these moving targets, particularly in these kinds of cases. And it's admirable that the city went back and, you know, thought through what it was doing, but it didn't say, never said, you know, I think maybe we just don't need these permits. If it had said that, then the case would have been moot, but it's still insisting you need the permits. That's true, Your Honor, but it does put us in a difficult position trying to evaluate abuse of discretion of the lower court when the lower court didn't consider the ordinance in its current form. It didn't have the benefit of — But if it had granted the injunction, you might be in better ground. But since it denied it, what difference does it make? In other words, all of these things that you're saying you made better, the district court didn't think were good enough to justify an injunction anyway. Your Honor, it is stronger now than when the district court considered the original ordinance. That is true. But just from a workability standpoint, suppose the court were to say, district court, you should go back and enter the injunction. We go back down to the trial court. We never say that. We say, you know, we reverse the failure to grant the injunction and now go back and grant some injunction. We don't talk about injunction issue. We grant some injunctive relief, Your Honor, but the complaint and the issues below are still based on the original ordinance. There's going to have to be some reworking of Mr. Cubiello's claims before we can even begin to address the preliminary injunction as to this ordinance. That's the huge problem we see with the mootness argument. Let's assume it's not moot. Assume it's not moot. Then the court's analysis is whether the district court erred based on the ordinance as it currently stands. In this case, the interests are specifically called out in the new ordinance, and the was designing the ordinance to narrowly tailor it to those interests. In this case... How is it narrowly tailored? It's narrowly tailored in that it only applies to sound amplification devices and lighting equipment used in public areas. It applies all over the city, though, doesn't it? Only once used in public areas, Your Honor. Previously, it was private with no exceptions. It doesn't prohibit the conduct altogether, but simply requires a permit. There's no fee. There used to be a fee. There's now only three days' notice, and there are those exceptions. But what — I mean, I understand that there's a list of purposes, but I don't understand how the purposes match up with the ordinance, because if the ordinance — if the permit requirement is essentially you promise to comply with the law that otherwise exists, and then we give you a permit, then how is the permit doing anything other than the substantive statute saying when you can make noise? It gives the city notice, Your Honor, and a chance to respond. So Mr. Kuviello's situation is actually an excellent example of the purpose of this ordinance. He's using a bullhorn in front of Six Flags Amusement Park, an area where — in other areas that might constitute a noise disturbance, but probably would not due to the noise around Six Flags. However, he expressly stated in his papers that he's using it to try to get the attention of drivers who he can't otherwise reach just with his normal speech. So we've got a situation in this case where he's distracting drivers as they're pouring into Six Flags with pedestrians. That's creating a traffic safety issue, essentially. So in this case, that's exactly the type of situation where we want to be able to say — Well, then he should be cited under the statute — substantive statute for creating a nuisance. But how does the permit help it? Well, Your Honor, it's not necessarily a nuisance, and we don't think it's needed to prohibit the conduct entirely. We would just like an opportunity to send officers down there to make sure that there are no traffic hazards going on and to deal with that if they see it, and also for other reasons, to protect the protesters and anyone who might come and clash with them with their opposing viewpoints. But that would all apply — those reasons really have very little to do with the noise. I'm sorry, Your Honor? They have very little to do with the noise. And it would seem, therefore, to be inconsistent with all of our case law that says that for small numbers of people to require a permit is just constitutionally suspect in itself. They have to do — The Portland case and food not bombs and so on. Your Honor, they have to do with the distraction that the noise causes. It's not so much the noise itself. It's not that it's, you know, noise pollution and that's the problem. It's that the noise is sudden and unexpected, and it's likely to distract the drivers and pedestrians who are walking around in this area in large groups. That's the problem. It's not that it's a — that it's an annoying noise or something of that nature. And so it's that distraction that we're really targeting here with this ordinance. So it's what they're saying, not the noise? No, Your Honor. It's the sudden bullhorn, sudden projection as the driver's entering Six Flags. But you're not forbidding it. You're just requiring them to have a permit. Correct, Your Honor, because we don't believe it needs to be prohibited in its entirely — in its entirety. We would just like notice so that we can come in and have officers there or someone there to ensure that that isn't going to cause traffic collisions, you know, to help direct traffic if needed, to help control the situation. So what you're saying is that if Mr. Cuviello had gone to the city and asked for a permit, he would have gotten it? Absolutely. Okay. And then what's the consequence of the permit? You send a police officer out there to make sure that there are no traffic problems caused by the bullhorn? Whether or not we send someone out there, Your Honor, depends on the circumstances. As Mr. Cuviello's brief points out, we do frequently send officers down to that location when there are protests to assist with that. This would just be a way of giving us notice to do so. And perhaps if there's just one bullhorn or perhaps if it's a different circumstance, maybe we don't send officers that time. But that notice of something coming up, of the sound amplification that's going to be used, gives the city an opportunity. And if somebody wants to hand out leaflets, you can get a permit for him, that person too, for the same reason? Leaflets? No, Your Honor, that wouldn't be covered. It wouldn't be covered, but why wouldn't it be covered? Why wouldn't you have the same problem? Because the sound amplification device is an unusual noise issue that can distract individuals, whereas leaflets, not so much. Certainly, if someone was handing out leaflets in the middle of the street, that would be a problem. Somebody is out there screaming loud without an amplification? I mean, it doesn't, it's not entirely credible, is the problem. Someone screaming without sound amplification would also have an impact, but the ability to amplify that sound even more greatly, and to reach drivers whose windows are closed as they're going in, presents a greater issue that the city sees. And that was part of what the ordinance was tailored to address. What do you make of the delay in Mr. Cuviello bringing this suit, and then after he brought the suit, delaying a few months before moving for a preliminary injunction? Should that play at all into our analysis? I believe that speaks to the irreparable harm element, Your Honor. So in addition to establishing a probability of prevailing on the merits, as you know, he also must establish irreparable harm. The fact that Mr. Cuviello waited that long to bring a motion for preliminary injunction really suggests that no irreparable harm is likely in this case. That in addition to the fact that the ordinance generally is not enforced, as has been shown by his very clear timeline of multiple protests that he's been to with other protestors using sound amplification devices where it was not enforced. Well, if you're not going to enforce it, you shouldn't have it. I mean, the whole point, if your point is to get police out there and you're not going to do it, then there's not a lot of point. Well, I think that there's some discretion in the enforcement, Your Honor, that the police exercise when they're out there. But this is relevant to the irreparable harm, the fact that most of the time it appears that the police are not exercising that discretion. No one has been cited. But as to his delay, I mean, it's — I don't know the details. I don't remember looking at it. But certainly an explanation could be that he wasn't planning to do a protest, and it was when he was about to do the protest that — or, you know, he was taking a break, and then when he stops taking his break and wants to go back there, that's when he has a problem. Your Honor, it seemed to me that he had very regular protests planned and that that was outlined in his briefs. During the period that it wasn't during the prior injunction? Yes, Your Honor. I don't know. Was there any authority for the officer to help to suggest that he could confiscate the bullhorn? I don't believe so, Your Honor. I believe that actually an administrative citation would be our remedy and would be what the officer would do. But what does that mean? It's like a traffic citation? What is it? I understand it's an infraction, Your Honor. It's not in the record. I'm sorry. It's criminal, but it's not a misdemeanor, essentially. Not a misdemeanor. But it's criminal. I don't know that it's criminal, Your Honor. I'm sorry. If you would like, I can send the letter brief. I mean, I've always understood that traffic violations are criminal, but not misdemeanors. Well, and it's not a traffic violation. It's administrative. So I actually — I don't think it would be criminal. But if the court is interested in that issue, I can submit a brief with a declaration. Well, what happens if you get one of these citations? Is it a fine or what? It's a fine, Your Honor. I see. Okay. How much is the fine? I'm sorry, Your Honor. I don't have that information with me either. The last two elements are the balance of hardships and the public interest. And there really just wasn't a lot of information on this from the plaintiff. The district court correctly found, I believe, that the city's hardship is in not being able to enforce this ordinance, not being able to regulate this sort of conduct all over the city, not just in front of Six Flags, because certainly there are other — But you're not regulating the conduct. That's the part that I don't understand. You're granting the petitions. You're talking about sending the police out? You can send the police anyway, right? So what's regulating the conduct? It's the advance notice, Your Honor. It gives us an opportunity to plan a response that's appropriate. But that's not regulating the conduct that's the subject of the petition, because the subject of the petition is legal conduct, right? Certainly, Your Honor. It's just the — it's the basis for the permit requirement. It's that we would like notice. As you pointed out, the permit is essentially yours for the asking. Just fill out this form. There's no discretion anymore in the new statute. If it meets the requirements — So it's the difference between knowing three days in advance that you're going to have to send out a policeman, which — if you do, which I don't know if you do, or having somebody call and say he's out there with a bullhorn and send a policeman, essentially. Correct, Your Honor. And so I think the worry would be, then, that we would get a flood of calls for something happening that we just didn't know about. A flood of calls because Mr. Covello is out there by six flags with his bullhorn? Not in this case, Your Honor. In other applications, certainly. For a single individual, you're correct, there are — But that's the problem. I mean, that's been the problem in the case law, is how many people you're talking. If you were talking about — in the case law, if you had 75 people, you could do it, right? That's what the case law says. But you don't. You don't want. Is there a separate permit requirement for large groups who are demonstrating, or — There is one for parades, Your Honor, but I don't believe there's one for just protests and demonstrating large groups, generally. So if it's a significant group that's going to parade or demonstrate, and they want to use a bullhorn, they have to comply with this one as well? Your Honor, I believe I'm out of time. Go ahead. I'm just curious how it all fits together. So I believe in that case, the permit granted for the parade would specify what could be done at the parade. But again, if that's an issue that the Court would like briefed, I can bring that in. No. Thank you. Your time is up. Thank you. Do you have some time for rebuttal? Thank you, Your Honor. I'll be brief. I want to make two points. One with respect to the narrow tailoring. I do want to direct Your Court to ER-51, which is the only declaration that the city put into evidence at the PI stage with respect to a justification for its restriction on speech. That is a declaration from the deputy city attorney. It is not just insufficient. The justification is nonexistent there in terms of how the city's interests relate to the regulated conduct. So I think that declaration is the only evidence that the district court could have relied on, and it's plainly insufficient to support a finding that Ordinance 8.56 is narrowly tailored. I would point, you know, to Judge Berzon's question about the size of the group. You know, if certainly if the city had used a permit requirement of this nature for a group of 25 or 30 people, that would be plainly unconstitutional under this Court's case law if it were using it just as a notice requirement for groups of that size. What it sounds like from the city attorney's discussion of how they plan to enforce or use this ordinance is that they are using it essentially as a backstop of tracking protests and demonstrators. And as she pointed to, the speculation about clashes between protesters, that has nothing to do with the sound put off by a bullhorn. It's completely unrelated. With the other thing that I would point out on the narrow tailoring point is this 50-foot restriction. This permit requirement applies to anyone whose bullhorn or other equipment can be heard more than 50 feet away. If I walked out of this courthouse onto 7th Street and yelled across the street, that would essentially be the equivalent of what would be covered in terms of the carriage of sound. That is a sweeping restriction on my client's First Amendment rights and others. Well, the only restriction really is that he has to tell the city three days ahead. You're right, Your Honor, that it does not absolutely prohibit him. But in cases like Watchtower Bible, the Supreme Court has been clear, just because it's a ministerial permit requirement, that doesn't mean that the individual's First Amendment rights are not infringed. And quickly, on the issue of irreparable harm, the delay in bringing this, of course, my client was acting pro se. Your Honors, I'm sure have looked at his briefs. They are not your typical pro se filings. I think in context, the timing of his filings was understandable. And as to the hardship ---- Why is that? I mean, he really feels strongly about the way Six Flags is treating the animals. So why would he delay 17 months before bringing a preliminary injunction motion? Well, he ---- he filed the suit within a year and then brought the preliminary injunction motion within a few months. I believe that there was some discussion as to whether that would be necessary with the city. And so it's not as if this was sort of a blank slate. I think there were ongoing discussions between my client and the city as to whether a preliminary injunction motion would have been appropriate. That comes through, I think, in the declaration of Frank Spondorio, again, at ER-51, there were a series of e-mails between my client and him introduced that show that there was such discussion. How ---- just because I'm curious, how did it come about that you and Public Citizen got into the case after the briefs were filed? Was this pro bono counsel or what exactly? That's right, Your Honor. This was a case in which the ---- After screening, somebody ---- there was a ---- was the case originally in screening? Is that what happened? The case was originally briefed. If there was an order that was put out, I don't think it was in response to anything in particular for the appointment of pro bono counsel. And given our First Amendment background, we volunteered to do it. If the Court has no other questions, we'd ask you to reverse. Thank you. Thank you. Thank you, counsel. The matter is submitted.
judges: Paez, Berzon, Feinerman